The next case today is St. Paul's Foundation et al. v. Robert Ives et al. Appeal number 21-1463. Attorney Martin, please introduce yourself on the record and proceed with your argument. Good morning, Your Honor. It's Tevin Martin on behalf of the Appellants, St. Paul's Foundation, and the Shrine of St. Nicholas. I would like to reserve three minutes for rebuttal, if I may. I'm sorry, did you ask for two or three? Three, Your Honor. Yes, you may have it. Thank you, Your Honor. Your Honors, the defendants violated our LUPA in this case by refusing to let plaintiffs renovate any part of the Shrine of St. Nicholas, including its chapel, to coerce plaintiffs into agreeing that the Fellowship Hall would not be regulated as a place of religious assembly. I would like to address three points today. First, our LUPA applies here because defendants were applying a zoning law within the meeting of our LUPA. Second, defendants' claims of good faith should not have been credited on the summary judgment record. And third, defendants' arbitrary conduct imposed a substantial burden on plaintiffs' religious exercise. To begin, the district court was wrong to hold, in this case, that there was not an application of a zoning law, because this case concerns a building permit and use classifications found in a building code. Zoning means far more than just dividing a town up into zones. As the 11th Circuit has recognized in Midrash Sephardi and the 2nd Circuit in Fortress Bible Church, zoning includes a wide variety of discretionary permitting laws that govern how property may be used, which may be included in building codes and enforced through building permits. Mr. Martin, I believe the decision we're reviewing had a portion of it that said, even assuming in your favor that RLUPA applies, you still lose because you have not shown on the facts of record either a substantial burden or that what the town did was not narrowly tailored. So why don't we move to that? Sure, and so both of those findings were erroneous as well, Your Honor, and I'll start with the substantial burden finding. The district court's conclusion that there was not a substantial burden here was based upon her erroneous view that really what the parties were fighting about was the scope of the renovations and that the town had a legitimate basis to withhold the building permit until some clarity was provided about what exactly... Mr. Martin, when you look at the documents of record, and you agree, I assume, that we need to look at all of the documents of the correspondence between your clients and the defendants in this case. Are we agreed that that's the basis on which we should review the record? We absolutely agree with that, Your Honor. Okay, so this isn't really a kind of subjective argument which you seem to have been suggesting. Am I correct? Well, where we think the district court went wrong is that if you look at the documents of record, we were consistently telling the building commissioner throughout the spring of 2019 that we intended to build consistent with the permit, and it was clear from those same written documents that the reason he was withholding the permit was not because he thought that our building plans had anything wrong with them. He was trying to coerce us into agreeing to an A2 use designation, which would, down the road, result in our having fewer people allowed on the property under a certificate of occupancy. Now, what the district court did, which was improper, was credit some later explanations that the town provided that were not set forth in the document. I'm sorry, I don't understand that. I thought the district court reviewed the documents and said, here is what the documents show, and what the documents showed was actually not consistent, pardon me, with the representations made in your brief or the way that you started this oral argument. And so I did go back to review the documents, and what I found was your arguments are not, in fact, an accurate representation of what the documents show. So could we please go back to what the documents show and the district court's findings? Gladly, Your Honor. And what the documents show is that if you look at our February 2013, sorry, February 13th, 2019 affidavit from our architect and construction control supervisor, we said that we wanted to build in the manner described in the permit drawings. He also said that the construction would be as previously permitted and in a manner consistent with the approved construction documents. That's appendix page 28. If you go on to page 108, this is a May 1st letter that our architect sent to Mr. Baldacci. He said, it is our intent to carry out the proposed work in accordance with the previously submitted plans, and we are requesting that you lift the suspension. Mr. Barton, I may have it wrong, but you had an original architect who applied for permits under certain provisions. Ultimately, your client and that architect had a parting of the ways. And then a new architect comes in, and he says to the town, Oh, I believe that the prior application was wrong. In fact, we are now applying under some different provisions of the code. Are we in agreement thus far? Your Honor, the only thing he said was wrong was the use classification. He did not say that the plans that were previously submitted were no longer the plans with respect to which the plan is intended to build. Okay, this helps me understand your argument. So you say, yes, indeed. He says to the town, part of the prior application on which you were acting is no longer operative. Now, does he expressly say, nonetheless, we want to proceed on exactly the same plans, or is it a negative pregnant that you are arguing? No, he says repeatedly that we intend to proceed under exactly the same plans, and this would be found at Appendix 28 and Appendix 108, which is the language I just read. It's found, again, in an email that's sent in May. This is Appendix pages 111 to 112. He says the underlying and previously permitted construction work has not changed. The implication of the dispute they were having over the use classification concerns not what will be built. It concerns how many people will be allowed on the property under some subsequent certificate of occupancy, and what the State BCAB said ultimately was that that dispute could be resolved after the building is completed. Well, you and I read the BCAB decision quite differently, but I believe Judge Barron has a question here. I don't know if Judge Cotto is about to ask a question. Okay. Okay. And so, Your Honor, with respect to the BCAB decision and the timing of the certificate of occupancy, what Mr. Baldacci, the building commissioner, was telling us in 2019 was that he would not reinstate our building permit, unless we conceded or first went through a state administrative process. Could I ask you about the permit? When you apply for a permit, don't you specify the zoning, the classification A2, A3, R2, or whatever, when you apply for the permit? You do specify it, Your Honor. Sorry, Your Honor, go ahead. And this permit here, your client specified A2 on the permit application? The permit application, which was actually typed up by the building commissioner, but it specified A2. And the permit did as well? Well, there's only really a permit. There's not a written permit application. There are plans that were submitted. So it seems a little odd that if at the very get-go part of the application process is to pin down the classification as A2, that then when your client's architect, new architect, comes in and says, we don't think it's A2 and we won't agree it's A2, I try to think back to how the permit application would have gone in the first instance. And wonder whether the whole application process presumes some resolution of this issue at the outset. Hence, that would explain why the building commissioner wanted resolution of it before he reissued the permit. And, Your Honor, if they had told us at the beginning, look, apply with an A2, you'll get the permit, you can build. And then later, after the building is completed, if you think you are entitled to A3, any additional occupancy you get... I'm sorry, what is the obligation? You're the applicant for the zoning permit. Until you do that, and then you withdraw the grounds for it, why is there any problem with the state building authorities asking you to carry through the process before they reissue the permit? And, Your Honor, this is where we think the BCAB decision comes in. No, I want you to deal not with that decision, but with my question. Because, Your Honor, there is no reason to refuse to allow the construction to go forward under the terms they previously gave us. We would complete the building, and then when we complete the building... What about your architect saying, no, the original premises were wrong? And then there were some findings that there were violations by your client of the conditions that permitted work to go forward. Your Honor, there were no violations related to the work going forward. The violations related to the service of alcohol, that was the prior year, and we had a very clean answer at page A376 in the appendix that had nothing to do with either the suspension of the building permit or the refusal to reinstate it. The refusal to reinstate it was only about the A2 versus A3 issue, which did not impact the construction that would occur. That's what I wanted to ask you about, just so I understand it. If the designation had been A3 from the beginning, would there have been any difference in the requirement for building? I do not believe so, Your Honor. Is there anything in the record that would tell us one way or the other besides your belief? I will review that. The fact is that we had agreed to a set of plans. I know you went to it. I'm just asking. I just want to understand what's going on here. If there was no difference in building requirements, even if you were classified A3 at the beginning, could you have applied and gotten a building permit on the assertion that you were an A3 use if the building commissioner thought you were an A2 use? If we thought we were an A3 and the building commissioner thought we were an A2, then what I think would happen is that he would say, I'm giving you this building permit. It will say A2 on it. That's not what I asked. Would he be legally entitled to reject your permit application on the ground that you're an A2 use, so I will not give you a building permit for A3 use? So I think what would happen is he would say, I will only give you this if it says A2. I will not give you this if it says A3. So at time one, it happened that you were willing to put forward something that said A2, and therefore you could get a permit. Then the architect goes away, and now the question is to reinstate. Why isn't it, and what in the record indicates that at that new time, what the building inspector was trying to figure out is, are you asking for a permit for an A3 use or an A2 use? Because if you're asking for an A3 use, I'm not giving it to you. And so we were asking for the existing permit, which said A2 on it, to be reinstated? You said you would build consistent with that permit. That's different than saying, I want a permit for an A2 use. Well, Your Honor, if you look, for example, at that May 1st letter at Appendix 108, it says we are requesting that you lift the suspension of the building permit. So we are asking for the, if you look at our complaint in this case, we're asking for the existing permit, which says A2 on it, to be reinstated. But the question is, up until, as I read the Board of Appeals decision, what it says is, notwithstanding all that happened beforehand, as of the date of this decision, appellant has represented to us that it will comply with the condition that it be an A2 use, knowing all the risks of that. The way I read that is that the Board was not saying that that was clear up until that moment. And where in the record does it make it clear that the thing that the Board says is clear at the moment of the Board's decision was clear as of May or any time between May and the Board's decision? And so if you look, for example, at page A120, which is our actual appeal to the BCAB, we are asking the BCAB to reinstate the building permit. Prior to the appeal, the moment of the appeal, at some point earlier than that, before you challenged it before the Board, when the commissioner was saying, I'm not going to give it to you, where is the indication that there was a representation, once the new architect is on board, that the representation that was clearly made to the Board had been made to the building inspector? And so, Your Honor, it's the correspondence in February and May in which we repeatedly say reinstate the building permit, which has the A2 provision in it. Yeah, but reinstate the building permit because we'll build consistent with it is different than reinstate the building permit because we will build consistent with it and be an A2 use, which is what I understand the inspector to want you to have said.  Now, that last part is where I don't follow, because you conceded that if up front he would not give you the permit unless you said it would be an A2 use, why can't he insist on that same representation at the reinstatement stage? Because he would give us the... I understand the question. At the original stage, if we had applied for something, and we said, we think ultimately we should be entitled to an A3 certificate of occupancy, and he said, I think you're only going to be entitled to an A2 certificate of occupancy, we would have had the option to accept the A2, move forward, complete the building, and then once the building was completed, keep the number of people who were allowed with the A2 and apply for more under the A3. What he refused to allow us to do in 2019 was move forward, complete the building, and even have the number of people an A2 would get us. But that's only because I thought the record showed that he reasonably understood you to be not saying we will conform to the A2 use, as you would say if you applied originally on that ground, you were now suggesting we're going to be an A3 use. That's what he didn't want to sign off on. And that was completely unreasonable. What's Arbitrary Capricious about trying to get that clarity? And that was completely unreasonable, Your Honor, because if you look at what we were actually telling him, which was lift the permit, we will build under the A2 permit. I just looked at 108, and that's not quite what you said to him. You do say in the sentence that it is our intent to carry out the proposed work in accordance with the previously submitted plans. Our justification for this is based on our code analysis below, and then there's an extensive two-page discussion of why it's not A2 and how they could put more people in. I would think any building commissioner with this receipt in hand would not construe that communication in quite the same way you say it should now be read. Your Honor, I think everybody understood that year, that ultimately we would be looking to have more people in the building based upon some different use classification, but that did not affect the work and did not justify a seven-month delay and allow us to move forward with the construction. Okay, Mr. Martin, your time is up. Unless my colleagues have any questions, we'll wait until your reserved time for rebuttal. Thank you. Thank you. Attorney Martin, please mute. And at this time, would Attorney Pagnini please unmute and introduce himself on the record to begin? Good morning, Your Honors. Greg Pagnini for the Applebee's, the Town of Marblehead, and Marblehead Building Commissioner. I think it probably makes sense for me to start where Your Honors left off, asking a bit about the permitting process in terms of how this began and how it ended up prior to the suspension of the building permit. In the beginning, when the shrine came to the town, there was discussion between the then building commissioner, Richard Baldacci, and the protos of the shrine, Father Andrew, about what the nature and scope of the renovation would be. And as you can see in the record, in the early correspondence from Baldacci to Father Andrew, he is reaching out, telling him what the process is, and advising him as to what his options are. The shrine's architect then indicated that the proper designation for this renovation would be an A2 assembly use, to which Baldacci, the building commissioner, agreed. This is the first moment, I think, where something that my brother just said is completely inaccurate, which is they're trying to have it both ways in the sense that, of course, they applied and received an A2 designation in the beginning, and then once things fell apart, they are now turning around and saying, of course, that was not something effectively that they wanted, and they always wanted an A3. But at any point in the process, if they wanted an A3 designation, they could have and should have simply applied for a variance to the BCAB to have that issue adjudicated. There was nothing that prevented them from doing so in the beginning. In fact, you'll see in every letter that he's supposed to have done. Let me ask you before you get to that point. Sure. You said something. If I apply for an A2 use permit, the building inspector agrees that it's an A2 use permit, and I submit the following application, I would like an A2 use permit. Just so you know, I think it's A3. Would that be permitted? I just want to make sure I understand your question, that the building commissioner says you're applying for A2, but I think it's A3? No, the applicant says I'm applying for an A2 permit. The commissioner agrees it's an A2 permit. The permit that will be issued says A2, but the applicant at the time of the application says, just so you know, I think it's A3. Thank you. Can the permit be denied? The permit could be denied, but there's really no reason. Why? I suppose there's no reason why it could be denied. Right. It would seem arbitrary to deny. It's free to say. It's a free country. I think it's A3. Right. I'm going to get an A2 permit. I applied for an A2 permit. I got an A2 permit. Go ahead. I'm sorry. My only question is, if I understand the other side, their suggestion is, that's the exact situation we had at time of reinstatement. Because they had an A2 permit, they were going to conform to the A2 permit. All they're saying is, just so you know, we think it's A3. But what's it to you? It's still an A2 permit. That's all I'll get. So how is it reasonable to deny it, nonetheless? If I understand their side, that's their side. Thank you. I do think, in a nutshell, that is what they're arguing. But that is completely belied by the factual record in the case. Just at every turn, it is belied by the factual record. At summary judgment, and what you heard from counsel, for the opponents just now, is suggesting to the court that it take a very, very narrow view of the facts in the case. It is trying to turn the court's eye away from the documentary evidence all over the case, essentially from very soon after when that permit was issued. I guess the question is just maybe more simple. Could a juror conclude that a request to reinstate a permit, when the permit that is reinstated already is only for an A2 use, that is obviously a request for that permit, and all that is being said is, that's the permit I'm asking for, that's the permit I'll bill to, that's the permit you'll give me. I think it's A3. And if that's the case, why isn't it just like the hypothetical I was suggesting to you earlier? What's your answer to that? The answer to that is the factual record demonstrates that it's different. Point us to what in the record shows it's different. First, as I had said before, if the Shrine ever wanted an A3 designation, they could have always petitioned to the BCAB, which they knew they could do in terms of the process, to get that variance. Show us what they said after February, that differentiates this case from Judge Barron's hypothetical, where they would say at the time of application, just so you know, I think it should be A3, but I'll go with A2. What did they say after February that was different than that? Prior to the permit being suspended in January, there was communications in the record of Father Andrew and his architects having disagreement over the scope of the project. For example, the number of bathrooms that they might construct, which then lent itself to a discussion about what the proper use designation might be. That's the R2 fight, correct? Well, the R2 fight comes afterwards. Thank you, because I was just going to get to that. But as of May, that bathroom issue had been resolved, correct? No, the May bathroom issue had not been resolved. So what happened was in January, after Somasco quits because he can't, in effect, he can't navigate the situation anymore with Father Andrew, the town receives a letter from a law firm, Sidney Austin, and the plaintiffs disregard this in whole. But in that letter, and this is prior to the new architect introducing himself, I think it was dated February 11th, they assert that the renovation project should be an R2, a monastery renovation. And there's also communications from Father Andrew to Somasco's partner architect asserting the same thing. That's a totally different designation. And Baldelci then writes to Father Andrew and says, wait a minute, I'm not sure what's happening here with the use designation and the scope of the project, because one lends itself to the other. And that's the point, is that depending on the use designation, there are requisites. I understand that. That is not... As of the time of the correspondence that was just cited by Mr. Martin, in which they say, I would like you to reinstate the permit, and I'm going to do it in accordance with the building requirements of that permit. What about that representation is ambiguous as to whether what they were asking for is the issuance of the A2-based permit? What they were going to be building, because that had been the subject of so much communications between his architect, Somasco, and the meeting with the town as of December 19th. And then the ensuing letters talking about the use designation. So both... So now are you saying that your case hinges on the record precluding a reasonable juror for thinking they would build in conformity, not agreed to how they'd use it, build in conformity with the A2 permit? Correct. Yeah, that was certainly a point of discussion. If I thought a juror could reasonably find that the plaintiff was willing to build in conformity with the requirements of the A2 permit, not withstanding disputes about whether they thought they had to use it in conformity with the A2 classification, can you still win? I'm just processing your question, but yes, yes. Okay, how can you still win? Because... If you... Well, leaving that fact issue aside, under the law, it is not a substantial burden when you're looking at that part of the analysis. Because I... I'm sorry, but I forget which one of your honors had pointed it out. But this was a reasonable disagreement over the interpretation of the building code. Well, that's what I want to now isolate on. If you take aside the fact dispute about whether they were going to build in conformity with the A2 permit requirements, because just positing a juror could reasonably find in this record that they would do so, I recognize you may dispute that. What is left that makes reasonable the decision to refuse to reinstate that permit? Because at all of the... From the time there was this issue regarding the scope of the project and then the use designation, the building commissioner was unsure what was going to be built and, as a result, what the use designation should be. That spanned from September or so of 2018 through and past the suspension of the permit, including the communications between the second architect, McShara, and Baldacci, the building commissioner, up until the time of the BCAB hearing. And so at the hearing is the first time that the Shrine came in and said, okay, disregard everything we've said, basically since the suspension of the permit, we're going to build to the permit. That's the first time they said that. And at the hearing, the commissioner, who was there, as was I, said, oh, okay, now that we have this on the record and they're representing that they're going to do that, I have no issue with that. But that was different from the confusion and the other messaging that we've been receiving over the past, what, six months or along the West. Could you focus on May? Because we've been pointed to an email that went back and forth in May. What, at that time, did the building commissioner think they might be doing if he let them go forward that wasn't in conformance with the permit? So one of the... Four minutes remaining. Go ahead. One of the things, thank you, that was discussed in that email chain is the use designation itself, i.e., whether it would be an assembly use or a monastery. I see a question coming. Is there anything, and I don't want you to lose that point, is there anything as of May that was reasonably in dispute about how they would build rather than how they would use it? Yes, thank you. And that's where I was going with that, which is if it was a monastery use, you would need, for example, a sprinkler system, and that was not in the original plans. And that was the point of what the building commissioner was telling or having the discussion with. Is that the A3 classification? No, that's the monastery. That's an R2 or an R1. I forget which one it was. Suppose we thought as of the time of May, and I recognize maybe the record won't bear this out, suppose we thought as of the time of May the R2 classification or that a juror could find that the R2 classification issue was not reasonably in dispute anymore and that all that was in dispute was the A3 versus A2 classification. Would that have required any different building? So here's where I'm unable to answer your question, and the reason for that is because under the building code, certain designations require certain things. So, for example, if it's an A2, X bathrooms for Y amount of people. I don't know offhand how that might be different under an R1 or an A2 or an A3 except to be able to tell you that those are the types of distinctions, the types of issues that the building commissioner was conversing with the architect about. One of the things that was surprising to the building commissioner when the idea of a monastery designation was brought to him was that it wouldn't necessarily allow for under that designation the public to come in, which was the entire purpose of the A2 assembly, right, which is to serve here. Maybe ask it the other way. Oh, I'm sorry, Judge. Was there anything as of May that would be required to be built in conformity with an A2 permit that they were not representing they would build to? I'm trying to remember the chain of e-mails as of May, which I think you're referencing, between McShera and the building commissioner, and I don't recall your Honor offhand in that e-mail exchange. The answer to that is no. The answer to that is no. There was nothing that was indicating they would not build to the requirements of an A2 permit. What indicates they were asking for anything other than the reinstatement of an A2 permit? Well, they certainly came in, if I'm understanding your Honor correctly, and asked for the A2 reinstatement in the BCAB hearing, and because that was different... At the time of May, before the BCBA hearing, weren't they asking to reinstate the prior permit? Isn't that what the correspondence... Yes, yes. Okay, so what then is the basis for concluding that since they were asking to reinstate an A2 permit, and you haven't identified anything as of May that suggests they wouldn't build in conformity with the A2 permit, what is the basis for concluding that as of that time, they were effectively in my hypothetical? In other words, give me an A2 permit, I'll build to an A2 permit, just so you know I think it's A3. Why wouldn't that be a reasonable reading of the record that a juror could find? I don't think that is an unreasonable reading of the record, except that, as the district court pointed out, there's more to it than that. The communications between the building commissioner and the architect, both between themselves and to Father Andrew, all talked about what structurally might be done, and as a result, what the proper use designation would be. And as the district court pointed out, those two things are together. So depending on the use designation and depending where we are in the timeline, there were different understandings of what it was that the shrine was going to be building, which was sort of the core issue here, which was there was an ever-shifting messaging from the shrine as to what it was that they were going to build. That was the nature of that time. So let me see if I'm... I'm not sure I'm understanding what you're saying. Let me take you back to Judge Barron's question. Suppose someone says, instead of saying, give me A2, just so you know, I think it's A3. Someone says, I want a permit for A2, but conveys that their plan is to use it as if it were an A3 or R2. In that scenario, would the building commissioner be compelled to give them a permit even though he believes their intention is to use it other than as an A2? The building commissioner provides what he believes is the correct reading or application of the building code as to what the use of the building is going to be. And as he says, and said in all of the letters to the shrine, if you disagree with me, then your avenue is to seek a variance. And if I'm overturned by the BCAB, so be it. But my good faith reading of the building code tells me that I believe this should be an A2 assembly use. And so he said repeatedly, and this is throughout the record, that if you want to go and have this, get a variance on this, that's fine. He didn't have a dog in that fight. He was simply reading the code and telling them what he believed was the proper application. I'm not sure I heard an answer to my question there. Would he give an A2 to an applicant? For example, an applicant says, give me an A2, I'm going to use it like it's an A3 or R2, but I want the A2 so I can get stuff in there. I think if... I can't answer for the commissioner because I don't know what he might do in that instance. All I can tell your honor is that... We have legal authority under state law to deny it in that instance. If he believed that it didn't comply with the building code... No, no. He believes that if it were used for A2 purposes, it would comply with the code. And he believes that the plan is to build it as A2 requires and he's confronted with an applicant saying, give me the A2 permit. But the applicant is making it clear that once it gets in there, he's going to defy the permit and use it as A3. Is the building commissioner allowed to look past the formalities of the application and say, I don't think you're going to actually comply with this permit, so I'm not giving it to you? In that hypothetical, I don't see how the building commissioner could say, I'm not going to give you the building permit at all. And then I would have to... And then I would seek to enforce it. That's what I would think. But that's sort of what I think is the... Council, I'm not sure I understood. There is no application for an A3 permit. There is only an application for an A2 permit. The applicant declares, I don't intend to abide by the restrictions of the A2. I intend to use it as an A3. But I'm not willing to amend the permit to say A3. And there are ongoing discussions as to the actual use of the building. I would have thought that the commissioner would be justified under state law if in his discretion he decided, no, we're not going forward until we get this A3 usage worked out. Are you saying state law would prohibit him from exercising such discretion? No, Your Honor. Thank you. In that instance, then the building commissioner I think would use his discretion and deny it. If the applicant was saying in no way, shape, or form am I going to use it consistent with what I'm applying for. The way that I understood the question though was I'm applying for it and at some point down the road I might seek to modify it because that's how I... That was not the question put to you. And your response in part is they were told constantly if you want to modify it you can. You can go to the board and you can ask for a zoning. Correct. All right. Thank you. Thank you. Any further questions? No, okay. Thank you. We'll hear from Mr. Martin again. He has three minutes reserved. Thank you, Your Honors. Kevin Martin again for the appellants. So, Your Honors, I think the discussion you were just having with my friend really crystallizes the issues because what we were looking to do and we think the factual record supports this is get our A2 permit back build in accordance with the A2 permit and once construction was complete we would seek a variance to get an A3 certificate of occupancy. Could you just explain your answer to Judge Gattas hypothetical to your opponent? What's your view of what state law would allow the building commissioner to do in the instance in which he thought you were making a pretextual application for an A2 use just to get going?  There are two very different points here and I want to make sure that I answer them both because this, I think, came out with Judge Lynch's colloquy with my friend. If an applicant goes in and says give me this permit my intention is actually to violate the permit not to seek a variance down the road but to violate it and it may be the case that the commissioner has discretion not to grant it in the first place. I actually don't know the answer to that question but that's not what we were trying to do here. We were asking to have our permit reinstated. Counsel, the representation has been made that the first time the explicit request was made that you were going to ask for variance was to the board that that option had never been presented to the building commissioner before. Your argument has been oh, it's implicit the building commissioner was required to have understood us to be implicitly saying oh, we're not going to violate the terms someday we will go seek this zoning variance. What support is there in the record that he was required to understand your activities in the way I just outlined? Your Honor, we consistently asked for the permit which had the A2 restriction on it to be reinstated. That's throughout February and May. That does not answer my question. And so if you get an A2 permit you're stuck with an A2 certificate of occupancy. If you violate that You're just dodging the pretext point that we started with. If you are willing to say you don't know what the right answer would be if you could have been understood by the building inspector to be pretextually asking for an A2 permit when you were going to clearly use it for an A3 purpose then what you said to us is that's not this case. This case is when you were not doing that. You were instead only asking for an A2 permit with the prospect of once getting it down the line in the regularized way being allowed to then use it for an A3 purpose. The question to you is what makes it clear that the building inspector had to understand you to be doing the second rather than the first because if he could have reasonably thought you were doing the first then he didn't act arbitrarily. Because as a matter of law if we get a building permit with an A2 designation we're limited to a certificate of occupancy with an A2 designation and if we violate that certificate of occupancy then we're in violation of law. And so there's nothing in the record there's literally no place in the record where we said for this hypothetical we're going to get this and have twice as many people as we're allowed to have. We asked for the permit and I think there should be an assumption at least for purposes of the summary judgment record that we would comply with the legal restrictions on our occupancy. Well why does the summary record have to show that he was unreasonable in thinking you wouldn't given this whole history? Because again we would be in violation of law if we were to have more people on the property than the certificate of occupancy allowed. And there's nowhere in the record where he said I thought you were going to be violating the permit. What he consistently said was for example A31, A112 the dispute between the parties was over the use designation not because he thought we were going to be violating. Thank you. Are there any further questions? Okay thank you Your Honor. Thank you both. Well argued on both sides. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel you may disconnect from the hearing.